AM-CHI RESTAURANT, INC.,
Appellant,

v.

Joy R. SIMONSON et al., etc., Appellees.

No. 21192.

United States Court of Appeals
District of Columbia Circuit.

Argued Feb. 16, 1968.

Decided May 1, 1968.

Mr. Samuel Intrater, Washington, D. C., with whom Mr. Albert Brick, Washington, D. C., was on the brief, for appellant.

Mr. John R. Hess, Asst. Corporation Counsel for the District of Columbia, with whom Messrs. Charles T. Duncan, Corporation Counsel, Hubert B. Pair, Principal Asst. Corporation Counsel, and Richard W. Barton, Asst. Corporation Counsel, were on the brief, for appellees.

Before BAZELON, Chief Judge, and WRIGHT and LEVENTHAL, Circuit Judges.

LEVENTHAL, Circuit Judge:

Appellant corporation operates a nightclub and is licensed to serve liquor therein. Appellees, the members of the District's Alcoholic Beverage Control Board, found that appellant had "allowed the premises for which the license was issued to be used for an unlawful purpose," in violation of D.C. Code § 25–118, by permitting a female employee to solicit a patron for the purpose of prostitution. A fourteen-day suspension of appellant's liquor license was ordered. The District Court, on cross-motions for summary judgment, upheld the Board's action. This appeal followed.

The testimony before the Board showed that a police officer in plain clothes went to appellant's nightclub to conduct an undercover investigation. On entering he was met by a young lady who conducted him to a table in the darkened

rear area of the premises and joined him there. She identified herself as an exotic dancer employed at the nightclub. At her urging he offered to buy her a drink. When the maitre d'hotel, one "Nick," came to the table to take their order, the girl ordered a bottle of champagne. When the officer suggested she might like a drink instead, she told him that in the rear of the restaurant he had to buy champagne. It cost $14.00, and payment was required on the spot, although he was permitted to defer payment for his own drink. He not only tippled, he tipped, for she also told him a tip to Nick was mandatory.

After a brief conversation she indicated that for $75.00 she would meet him the next day to have sexual relations. That tentatively agreed on, she left the table to start her dance. She warned him that Nick would bring another girl over to the table, but that by saying he was short of money he could avoid another round of champagne. Another girl was brought over, and this time the officer bought only a champagne cocktail. Later that evening the dancer gave him her name and telephone number. The next day she met him at his hotel, accepted $75.00 from him, and was arrested.

Appellant contends that it may not be penalized by suspension of its liquor license unless it had knowledge of the act of its employee. Appellant urges that it had no such knowledge, and claims that the evidence shows merely an isolated instance of solicitation for prostitution. Appellant further points out that all its dancers were hired through a union, and were required to be members in good standing of the union, and that this particular dancer was fired as soon as her conduct was known.

We think the Board's finding was permissible, and therefore affirm the District Court's order. The Alcoholic Beverage Control Act provides for revocation or suspension of a license if the licensee violates the Act or regulations issued thereunder "or fails to superintend in person, or through a manager approved by the Board, the business for which the license was issued, or allows the premises * * * to be used for any unlawful, disorderly, or immoral purpose, or knowingly employs in the sale or distribution of beverages any person who has * * * within ten years prior thereto, been convicted of any felony, or such licensee otherwise fails to carry out in good faith the provisions of this act." [1] The word "knowingly" is specifically used only in the provision as to knowing employment of a felon. We have no occasion to consider whether a suspension or revocation could be sustained if the record were totally devoid of circumstances implicating the licensee, on a theory utilized in some jurisdictions of absolute liability,[2] or imputed liability for the fault of an employee, even though the licensee had no reason or basis for supposing that such fault might exist.

The Board's order does not spell out for us the theory on which it proceeded. Its finding is phrased in terms of the statutory language, and no subsidiary findings indicate whether the Board's theory is that every restaurateur is absolutely liable for all employee conduct, or merely that on these facts a more narrow responsibility had been transgressed. We are concerned by the failure of the Board to articulate its standards, and thus provide assurance of evenhanded application, but appellant has not challenged the failure of the Board to lead up to its ultimate finding by narrower findings and we do not deem it necessary to explore that question.[3]

We sustain the order, presumptively valid, on the assumption that the Board assigned responsibility to the licensee

1. 25 D.C.Code § 118.

2. Therault v. O'Dowd, 223 A.2d 841 (R.I. 1966); In re Olympic, Inc. v. Director, Division of Alcoholic Beverage Control, 49 N.J.Super. 299, 139 A.2d 768 (1958).

3. New Castle County Airport Comm. Board of Transportation of New Castle County v. CAB, 125 U.S.App.D.C. 268, 371 F.2d 733 (1966), cert. denied, 387 U.S. 930, 87 S.Ct. 2052, 18 L.Ed.2d 991 (1967).

not for intention or complicity on any particular occasion, but because his method of operation, continued over time, harbored sufficient danger of mischievous consequences sooner or later to permit such assignment of responsibility for the tawdry incidents when and if they take place.

Appellant was running a business fraught with possibility for prostitution; female employees were permitted to "proposition" customers at least to the extent of proposing purchase of drinks at inflated prices, and the maitre d'hotel was an open part of that operation. In these circumstances the Alcoholic Beverage Control Board need not have before it evidence to show that there were prior solicitations, or that the appellant had specific knowledge of this one. It is enough that the employee's regular duties required verbal intercourse with unattached patrons, that the atmosphere provided by the employer was at least conducive to the initiating of arrangements for post-prandial intercourse of another kind, with intoxicants to heighten the stimulus of a private talk with an exotic dancer, if indeed the high liquor prices did not affirmatively reflect the special convenience of the site as a dual market place.

■■ In short, there is a basis under the law for an objective standard, assessing liability for fire on those who play with matches, regardless of the inability to demonstrate subjective intention.[4] And the Board's modest discipline—here, a 14-day suspension—suggests that it was related to an offense established by such an objective standard rather than to a finding of deliberate and knowing permission of immoral use of premises.

■ Appellant also contends that the procedures of the Alcoholic Control Board

violate due process because they impermissibly mix prosecutorial and adjudicative functions. No such claim was made either before the administrative agency or in the complaint filed in the District Court.[5] We do not think it an abuse of discretion for the trial court to fail to consider the question.

Affirmed.

---

4. The mere fact that a "B-girl" operation was not illegal per se—until outlawed specifically by a regulation later issued— is no defense. A man may be held responsible for an act of recklessness that results in injury even though there would have been no responsibility in the absence of injury.

5. Indeed, the record of the administrative proceedings before the court did not even contain the purported dialogue between counsel and the Board that might have served as a factual predicate for such a claim.