**JAMES BAKALIS & NICKIE BAKALIS, INC., t/a Gold Rush, Appellant,**

v.

**Joy R. SIMONSON, James G. Tyson and J. Bernard Wycoff, Constituting the Alcoholic Beverage Control Board of the District of Columbia.**

**BAKALIS BROTHERS, INC., t/a Gold Rush, Appellant,**

v.

**Joy R. SIMONSON et al.**

**Nos. 23157, 23468.**

United States Court of Appeals, District of Columbia Circuit.

Submitted on Brief Jan. 26, 1970.

Decided Aug. 4, 1970.

---

**516**

Mr. Kenneth D. Wood, Gaithersburg, Md., submitted on the brief, for appellant.

Mr. Leo N. Gorman, Asst. Corporation Counsel for the District of Columbia, with whom Messrs. Charles T. Duncan, Corporation Counsel, at the time the brief was filed, Hubert B. Pair, Acting Corporation Counsel, and Richard W. Barton, Asst. Corporation Counsel, were on the brief, submitted on the brief, for appellee.

Before BAZELON, Chief Judge, and TAMM and MacKINNON, Circuit Judges.

MacKINNON, Circuit Judge:

Appellant owns and operates a restaurant-night club in the District of Columbia, known as the "Gold Rush." The Alcoholic Beverage Control Board (the Board) suspended appellant's liquor license in two separate proceedings for 21 days in one and for 17 days in the other. These appeals are from the District Court's denial of a preliminary injunction in each case.

In the first case, No. 23157, the Board held a hearing on April 14, 1969, and heard testimony from officers of the Metropolitan Police Department, as well as from employees and the individual owner of the Gold Rush. According to the testimony, on February 13, 14, 15, 18 and 20, 1969, "go-go" or "exotic" dancers who were resting between acts sat with the officers and solicited the officers to buy their drinks. The girls told the officers that they did not receive a kickback, but they were under instructions not to socialize with patrons unless they were bought drinks. The record shows a clear pattern of operation which solicited Gold Rush customers into entertaining fancy ladies with liquor purchased at fancy prices. On one occasion the dancer came over and offered to join an officer, and when he returned to the Gold Rush on a second night, the hostess told him that the same dancer was looking for him. A second officer testified that a waitress offered

to call a girl over, but he would be expected to buy champagne which seems to have been the standard drink the girls solicited. The going rate was $12 for a bottle that the officer testified would normally cost $1.50. These instances show a standard mode of operation of which the management had to be well aware. On the basis of the police officers' testimony, which was not materially contradicted, the Board found violations of section 17 of the Alcoholic Beverage Control Act (D.C.Code § 25–118)[1] and section 2–155 of the Alcoholic Beverage Control Regulations.[2]

In addition, there was a finding that alcoholic beverages were served at 2:30 A.M. on February 19, 1969 in violation of section 17 and section 2–110(b) of the Alcoholic Beverage Control Regulations.[3] When the officer was served the drinks, the dancer he was entertaining at that particular time told him to tip a busboy $2 instead of paying for the drinks. The officer testified that about ten patrons were being served after hours in addition to himself and the dancer with him. A second charge not involving solicitation of drinks was that on February 15, 1969, an exotic dancer removed the pasties from her breasts as the finale to her act.[4] The District Court found all the above conclusions of the Board to be supported by substantial evidence except a charge of solicitation for prostitution on February 20, 1969 was not upheld.

1. If during the period for which any license was issued the licensee shall be convicted of any felony, or if any licensee violates any of the provisions of this chapter or any of the rules or regulations promulgated pursuant thereto or fails to superintend in person, or through a manager approved by the Board, the business for which the license was issued, or allows the premises with respect to which the license of such licensee was issued, to be used for any unlawful, disorderly, or immoral purpose * * * or such licensee otherwise fails to carry out in good faith the provisions of this chapter, the license of said licensee may be revoked or suspended by the Board after the licensee has been given an opportunity to be heard in his defense, subject to review by the Commissioners in case of revocation or in case of suspension for a period of more than thirty days, as herein provided. * * * D.C. Code § 25–118.

2. Section 2–155 of the Alcoholic Beverage Control Regulations reads:
   *Solicitation of Drinks.* No retail licensee, class C or D, shall require, permit, suffer, encourage, or induce any entertainer or employee to solicit in the licensed premises for herself or himself or for any person other than the patron and guests of the patron, the purchase by the patron of any drink, whether alcoholic or non-alcoholic, or money with which to purchase the same; nor shall any retail licensee, class C or D, pay a commission or any other compensation to any person

frequenting his establishment or to his agent or manager to solicit for herself, himself, or for others, the purchase by the patron or any drink, whether alcoholic or non-alcoholic.

3. Section 2–110(b) of the Alcoholic Beverage Control Regulations, as amended, reads:
   No licensee holding a retailer's license class C, class D or class F, or a license issued under section 11(1) of the Act, shall sell or serve any beverages between the hours of 2:00 a. m. on each day of the week and 8:00 a. m. on weekdays or 12:00 noon on Sundays.

4. Appellants cite In re Giannini, 69 Cal.2d 563, 72 Cal.Rptr. 655, 446 P.2d 535 (1968), cert. denied, 395 U.S. 910, 89 S.Ct. 1743, 23 L.Ed.2d 223 (1969), and assert that there should have been evidence before the Board that the removal of the pasties exceeded community standards or appealed to prurient interests. However, *Giannini* was a criminal prosecution under statutory prohibitions of indecent exposure and lewd or dissolute conduct. We do not have a criminal prosecution here, but only a finding that a licensee was not using the licensed premises within the regulations under which the license was issued. Inasmuch as we find the period of suspension to be a general one not tied to any one offense, we will not pursue the constitutional claim, but only note that the claim of restraint is *de minimis* as presented on these facts and in this procedural context.

Since the length of suspension was a general one, the trial court saw no reason to disturb the period of suspension because of the reversal of the solicitation for prostitution charge. We will deal with this phase of the case later.

On May 12, 1969, the Board also held a hearing on the second case. The nature of the charges and the evidence was substantially the same as in the first case. The Board found that on three occasions employees had acted as B-girls and solicited a patron to purchase an alcoholic beverage for her. The three solicitations took place on March 6, 8 and 15, 1969. A fourth finding of the Board was that on March 15, 1969, the premises were used for an "unlawful, disorderly or immoral purpose" in that one of the employees solicited for the purposes of prostitution.[5] The District Court found that the Board's conclusions in the second case were all supported by substantial evidence.

■■ Appellant's first claim in both cases is that the Board disregarded the substantial evidence standard. As we noted in Am-Chi Restaurant, Inc. v. Si-monson, 130 U.S.App.D.C. 37, 396 F.2d 686 (1968), the findings of the Board are presumptively valid. The officers testified to numerous and open violations, and we find that their testimony was sufficient to support the charges by more than substantial evidence.

■ The claim is also made that the Board impermissibly mixes prosecutorial and adjudicative functions by issuing its own citations, and holding its own hearings. The Corporation Counsel for the District presented the case against the Gold Rush and the investigating work was done by the Metropolitan Police Department. However, some mixing of functions by the Board is a necessary part of the administrative scheme and does not *per se* violate due process. F. T.C. v. Cinderella Career and Finishing Schools, Inc., 131 U.S.App.D.C. 331, 338, 404 F.2d 1308, 1315 (1968).

■ When the Board suspends a liquor license for a period of more than 30 days the statute gives the licensee a right to appeal to the Commissioners of the District of Columbia to review the action of the Board.[6] The violations in

---

5. Appellant questions whether the conversations which took place on the premises amounted to solicitation for the purposes of prostitution. The entertainer took down the hotel name of the officer and promised to meet for lunch and "a good session." (App. p. 17). A court can conclude from the circumstances and context of a conversation what a certain person meant by certain vernacular and colloquial expressions. Mack v. United States, 326 F.2d 481 (8th Cir. 1964). A witness may likewise testify as to what he understood to be the true meaning of the words used by another. Wiley v. United States, 257 F.2d 900, 908 (8th Cir. 1958); Parente v. United States, 249 F.2d 752, 754 (9th Cir. 1957); Bat-sell v. United States, 217 F.2d 257, 262 (8th Cir. 1954). In the context of the conversation here, there is little doubt what the parties were discussing, and it constituted substantial evidence upon which the Board was fully justified in finding that a solicitation for prostitution had taken place. The solicitation for prostitution was subsequently confirmed by discussion over price and other subsequent events at an agreed rendezvous.

6. D.C.Code § 25–106 provides:
   * * * [I]n case a license is revoked or is suspended for a period of more than thirty days by the Board, the licensee may, within ten days after the order of revocation, or the order of suspension for a period of more than thirty days is entered, appeal in writing to the Commissioners to review said action of the Board. * * *
   D.C.Code § 25–118 provides:
   * * * [T]he license of said licensee may be revoked or suspended by the Board after the licensee has been given an opportunity to be heard in his defense, subject to review by the Commissioners in case of revocation or in case of suspension for a period of more than thirty days, as herein provided. * * *
   Section 401 of Reorganization Plan No. 3 (1967) transferred this review from the now superseded Board of Commissioners to the Commissioner of the District of Columbia. *See* D.C.Code (Supp. III, 1970), Title I, Administrative Appendix p. 43.

these two cases were by the same establishment and for the same basic reasons, *i.e.*, that the Gold Rush was being operated improperly over a period of time. We note that the Board's hearing in the first case actually took place on April 14, 1969 after the police officers on March 6, 8 and 15, 1969 had collected their evidence in support of the violations alleged in the second case. Since the last evidence in the *second* case was obtained on March 15, 1969, approximately 30 days prior to the hearing on the *first case*, there does not appear to be any reason why the charges were not consolidated and brought as one case instead of two. The liability here imposed on the licensee is not strictly for separate acts constituting violations by individuals on separate days. Rather, it is also for a continuous "course of conduct"[7] of which the licensee is deemed to have actual and imputed knowledge and to be held to a vicarious responsibility. This results from direct evidence of certain improper acts of his employees, agents and others on the premises, and also from the fact that such acts continued over a period of time and partly because of the duration of these improper acts the licensee is deemed to have allowed and suffered them. Thus because the responsibility of the licensee is based partly on the continuance of the acts over a period of time it would have been proper, and in fact preferable, to join the two cases together and thereby strengthen the case against the licensee by covering a longer period. Here the Board suspended the license of the Gold Rush for 21 days in the first case and for 17 days in the second case, a total period of 38 days.

By proceeding in two separate cases, in neither of which the period of suspension was for "more than 30 days," it is contended that appellant never acquired a right of appeal, but since these two cases are each for a similar course of continuous conduct and since the investigation in both cases was completed 30 days before the hearing in the first case and since no satisfactory reason appears as to why they should not have been handled as one case at one time, we hold that the two cases were essentially one, should have been so considered and handled and that in such circumstances it was improper to deny appellant the right of appeal which the statute provides for suspensions of over 30 days. With respect to the separate charges, we agree with the individual decisions of the two district judges that the findings of the Board in each case (except in case No. 23157, Finding No. 7 of the order of April 22, 1969, as affirmed by the subsequent order of May 28, 1969), are based upon findings of fact supported by substantial evidence and are not arbitrary or capricious. However, we find that appellants should have been afforded the right to appeal under D.C.Code §§ 25–106 and 25–118, since the total period of their suspension was for more than 30 days.

We accordingly remand the cases to the District Court involved in No. 23468 with instructions that an injunction issue restraining the Board from suspending appellants' license until the Board reconsiders its total period of suspension in both cases in the light of this decision and in view of the fact that the District Court found Finding No. 7 in case No. 23157 to be unsupported by substantial evidence. The Board may desire to reduce the total period of suspension, but it is not required to do so. The injunction will further provide that in the event the Board reduces the total period of suspension in both cases to 30 days or less, the injunction shall thereupon terminate, but in the event the Board decides that the license be suspended for a

7. *See* United States v. Universal C. I. T. Credit Corp., 344 U.S. 218, 73 S.Ct. 227, 97 L.Ed. 260 (1952).

period in excess of 30 days then the injunction shall stay the suspension of the license until appellants' right to appeal under the statute is heard and decided.[8]

So ordered.

---

8.  We have previously indicated our concern with the tendency of the Board to couch its findings solely in the language of the applicable statutes and regulations, rather than to attempt any clear articulation of the reasoning that forms the basis for its ultimate conclusion that a violation has taken place. *See* Am-Chi Restaurant, Inc. v. Simonson, 130 U.S. App.D.C. 37, 38, 396 F.2d 686, 687 (1968), and cases cited. In the present cases, as we have already indicated, we find the nexus between the facts found and the Board's conclusion sufficiently clear that we may give proper weight to the presumption of validity which the law affords the actions of an administrative body. In future cases, however, we would strongly urge the Board to undertake a fuller explication of the reasoning that underlies its decisions.