2447 GOOD HOPE ROAD, INC., a corporation, t/a Clancy's #3, Petitioner,

v.

**DISTRICT OF COLUMBIA ALCOHOLIC BEVERAGE CONTROL BOARD,** Respondent.

No. 6492.

District of Columbia Court of Appeals.

Argued July 24, 1972.

Decided Oct. 2, 1972.
Rehearing and Rehearing En Banc Denied Nov. 30, 1972.

Michael Ritz, Jr., Washington, D. C., for petitioner.

Earl A. Gershenow, Asst. Corp. Counsel, with whom C. Francis Murphy, Corp. Counsel, and Richard W. Barton, Asst. Corp. Counsel, were on the brief, for re-

spondent. David P. Sutton, Asst. Corp. Counsel, entered an appearance for respondent.

Before KELLY, NEBEKER and PAIR, Associate Judges.

NEBEKER, Associate Judge:

Petitioner seeks review of a final order of the Commissioner of the District of Columbia affirming and adopting the findings and conclusions of the Alcoholic Beverage Control Board [1] (the Board). The order revoked petitioner's class "C" retailer's license because of violations of the District of Columbia Alcoholic Beverage Control Act (the Act) and regulations promulgated thereunder. After proper notice of charged violations of the Act and regulations had been given petitioner, a hearing was conducted which resulted in the following Board findings:

"1. . . . that [petitioner] did violate the Order of this Board of February 19, 1971, by permitting Ernest E. Byrd to hold himself out or represent himself as an officer and designated manager of the licensed premises, and it did further permit the said Ernest E. Byrd to take an active role in the management of the licensed premises.[2]

"2. . . . the licensee failed to superintend in person, or through a manager approved by the Board the business for which the license was issued.[3]

"3. . . . the licensee did fail to frame its license under glass and post same in a conspicuous place in its premises.[4]

"4. . . . the licensee allowed the premises for which the license was issued to be used for an unlawful purpose in that it did allow the consumption of an alcoholic beverage . . . at a time when such consumption is prohibited." [5]

The first three violations found arose out of events occurring on January 12, 1972. The fourth violation and a fifth violation,

1. Under the District of Columbia Alcoholic Beverage Control Act orders of the ABC Board revoking or suspending a license for more than 30 days are reviewable by the Commissioner as part of the administrative process before this court will exercise the powers of judicial review under the District of Columbia Administrative Procedure Act (D.C.Code 1967, § 1–1501 et seq. (Supp. V, 1972)). *See* D.C.Code 1967, § 25–106, and D.C.Code 1967, § 25–118 (Supp. V, 1972).

2. The validity of the Board's order dated February 19, 1971, was the subject of another appeal to this court. In Byrd v. District of Columbia Alcoholic Beverage Control Bd., D.C.App., 289 A.2d 877 (1972), this court affirmed the Board's order.

3. *See* D.C.Code 1967, § 25–118 (Supp. V, 1972), which states in pertinent part:
   "If during the period for which any license was issued the licensee . . . fails to superintend in person, or through a manager approved by the Board, the business for which the license was issued, . . . the license of said licensee may be revoked or suspended by the Board after the licensee has been given an opportunity to be heard in his defense . . . . "

4. Section 3.2(a) of the Alcoholic Bverage Control Board regulations states:
   "Every person receiving a license to manufacture, sell or permit the consumption of beverags shall frame the same under glass and post it conspicuously in his place of business."

5. Section 3.4 of the Alcoholic Beverage Control Board regulations states in pertinent part:
   "(b) No licensee holding a retailer's license class C . . shall sell or serve any beverages between the hours of 2:00 a. m. on each day of the week and 8:00 a. m. on weekdays or 12:00 noon on Sundays."
   * * * * *
   "(d) Retailer's class C . . . shall not during the hours sales are prohibited dispense, serve, or give away any beverage for consumption on the said licensed premises."

essentially identical to number two, arose out of events occurring on January 27, 1972.

Petitioner here alleges error in that the revocation of its license under the circumstances was a denial of due process of law and that the order was not supported by substantial evidence, particularly evidence of an intentional or willful violation of the Board's previous order. We disagree and affirm.

At the hearing, an investigating officer and a plainclothesman from the Metropolitan Police Department testified that in a routine check conducted on January 12, 1972, they found, upon entering the premises, that the ABC license for petitioner's establishment was nowhere in view. They asked the bartender if he was the manager, to which he replied that he was not. After asking to speak to the manager, Mr. Ernest Byrd identified himself as the manager and invited the officers to step into the office which was located in the rear of the building. There the officers examined the ABC license which was tacked to the office wall along with Byrd's manager's license. Byrd represented that he was the vice-president of the corporation but did not mention that his manager's license had been revoked. No other approved managers were identified or shown to be present and the representation made clearly showed that Byrd was in fact the one who was superintending the business.

Further testimony by other witnesses indicated that Byrd had recently fired one of petitioner's employees, that he had told another employee to obtain a manager's license, and that he gave orders to petitioner's other ABC Board-approved managers. Byrd was considered by petitioner's employees to be the "Boss".

Upon this evidence, the Board was justified in finding that Byrd was "hold[ing] himself out or represent[ing] himself as an officer and designated manager of the licensed premises", and that he was "tak[ing] an active role in the management of the licensed premises." Likewise, the Board's finding that no authorized manager was superintending the business is similarly substantiated as the evidence clearly showed that Byrd was the one who was in fact "superintending". The evidence also supports the finding regarding the license-posting violation.[6]

As for the charges respecting January 27, 1972, the testimony of the witnesses at the hearing showed that beverages were consumed after 2:00 a. m. by employees of the establishment in violation of the provisions pertaining to its class "C" retailer's license. On that occasion the person representing himself to be the manager admitted not having been approved[7] by the ABC Board as a manager for the establishment. Thus, the charged violations were supported by the evidence.

Petitioner asserts that legally there was no requirement to have a manager superintending the business after 2:00 a. m. because it could not lawfully conduct business after that hour. Section 25–118 (*supra* note 3) requires superintendence by an approved manager of "the business for which the license was issued" "during *the period* for which [the] license was issued". (Emphasis supplied.) Obviously this "period" of time means the duration of the license and not the lawful day-to-day business hours. Moreover, petitioner cannot be permitted, in these circumstances, to plead a violation of section 3.4 (*see* footnote 5) as a defense to the statutory viola-

6. Petitioner claimed at oral argument that there were no definite standards adopted by the Board for determining whether the license was posted conspicuously. Because this issue is belatedly raised and because the license under any standard could not be construed as being framed under glass

and conspicuously posted, we do not consider the point further.

7. Although another witness testified regarding her presence on January 27 as "manager", she was not at that time an ABC Board-approved manager.

tions of failure to superintend the business. *Cf.* Nation v. District of Columbia, 34 App.D.C. 453 (1910). Since the business for which the license was issued was ongoing, albeit illegally after hours, without an approved manager in charge, a violation of section 25–118 was legally possible and on this record it was factually established.

Petitioner also claims that outright revocation of the ABC license under these circumstances amounted to "economic execution" and was so harsh that petitioner was denied due process of law. In support of this proposition, petitioner cites cases where allegedly similar violations of Board regulations did not result in sanctions as severe.[8] Under D.C.Code 1967, § 25–118 (Supp. V, 1972), failure to superintend in person or through a manager approved by the Board is specifically listed as a basis for revoking the license of the licensee. Similarly, violations of ABC Board rules and regulations may also merit license revocation. In the case at bar, those in a position to lawfully operate the business had been specifically put on notice as to the proscription respecting Byrd's participation in the management of the establishment. Petitioner (the corporation) was one of five parties to which the April 5, 1972 order was directed. Under these circumstances, the evidence relied on by the Board "satisfies the statutory test of 'substantial evidence', and the Board's ultimate conclusion is within the scope of its statutory discretion." Citizens Associations of Georgetown, Inc. v. District of Columbia Alcoholic Beverage Control Board, D.C. App., 280 A.2d 309, 311 (1971) (footnote omitted). *See also* Sophia's Incorporated v. Alcoholic Beverage Control Board, D. C.App., 268 A.2d 799, 801 (1970). We therefore

Affirm.

---

8. James Bakalis & Nickie Bakalis, Inc. v. Simonson, 140 U.S.App.D.C. 241, 434 F.2d 515 (1970); Am-Chi Restaurant, Inc. v. Simonson, 130 U.S.App.D.C. 37, 396 F.2d 686 (1968).