Joseph Anthony JENKINS, Appellant,

v.

UNITED STATES, Appellee.

Nos. 4420, 4421.

District of Columbia Court of Appeals.

Argued Feb. 5, 1968.

Decided May 29, 1968.

David C. Niblack, Washington, appointed by this court, for appellant.

Joel M. Finkelstein, Special Atty. to the U. S. Atty., with whom David G. Bress, U. S. Atty., Frank Q. Nebeker and William M. Cohen, Asst. U. S. Attys., were on the brief, for appellee.

Before HOOD, Chief Judge, and MYERS and KELLY, Associate Judges.

KELLY, Associate Judge:

Upon conviction by the court appellant was sentenced to consecutive terms of one year for assault and six months for possession of a prohibited weapon. All alleged errors relate to the weapons charge.[1]

Appellant complains that the information charging possession of a prohibited weapon was improperly drawn and improperly amended, both before and at trial. The information is in printed form with blank spaces for insertion of the defendant's name, the date of the offense, and the type of weapon possessed. Originally "James Wills", the name of the complaining witness, had been typed in this latter space. The information thus read that appellant, on a certain date, did "possess, with intent to use unlawfully against another, James Wills", etc., an obviously meaningless charge. Wills' name had then been deleted and the words "immitation (sic) pistol" inserted by hand in its place. More than that, the information was unsigned, a circumstance which the Government argued resulted from inadvertence. The trial judge noted these discrepancies when the cases were called for trial and permitted the information to be signed. While no specific objection was made at the time of this amendment, appellant's counsel stated more than once in oral argument that he had previously seen the information and intended to raise the points himself once the witnesses had been sworn.

General Sessions Criminal Rule 6(c) permits an information to be amended at any time prior to verdict or finding "if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced." In the past this court has held that the absence of a signature on a criminal information is not a matter of substance but one of form only, in no way prejudicial to the defendant.[2] And we are not now persuaded by appellant's argument that by signing the information the Government brought a new charge upon which appellant should again have been arraigned. If a conviction on an information containing no signature at all can stand, there is no logical reason to reverse a conviction on an information in which this formal defect has been cured by amendment, particularly

1. We do not consider the claim that apparently appellant was not given credit for time spent in jail awaiting trial since we understand such credit has been given as required by statute. 18 U.S.C. § 3568 (1966).

2. Graham v. District of Columbia, D.C. Mun.App., 127 A.2d 150 (1956); Perlich v. District of Columbia, D.C.Mun.App., 90 A.2d 227 (1952); Anderson v. District of Columbia, D.C.Mun.App., 48 A.2d 710 (1946); accord, United States v. Wright, 365 F.2d 135 (7th Cir. 1966), cert. denied, 386 U.S. 918, 87 S.Ct. 879, 17 L.Ed.2d 789 (1967); People v. Thomas, 1 Mich.App. 118, 134 N.W.2d 352 (1965).

in a case where, as here, no possible prejudice can be shown.[3]

No offense was charged against appellant by the information until the words "immitation (sic) pistol" were interlined in place of the name of the complainant. Nothing in the record indicates when this change was made, but we think it fair to assume that the information was corrected before it was filed in court. The cases hold there is a presumption that any changes, erasures, or interlineations on an indictment were made before the indictment was returned,[4] and this presumption is strengthened when the charges made are not only not contrary to the probable meaning of the indictment but make that meaning clear.[5] We think this same presumption applies with equal force to an information where the charge is brought directly by the Government through its prosecuting attorney rather than by indictment of the grand jury, and again, absent any showing of prejudice, we find no error.

The testimony at trial was that appellant boarded a D.C. Transit bus and did not pay his fare. When asked by the bus driver to do so, appellant drew what appeared to be a pistol and told the driver to keep on driving. Appellant then placed the pistol in his belt and walked to the back of the bus, where he again took it out, waved it around in a manner which caused other passengers to move away, and sat down. When appellant was arrested on the bus a .22 caliber blank pistol was found on the floor at his feet. After conviction, and in mitigation of sentence, both appellant and his attorney stated that appellant had been drinking the night of his arrest to keep himself from thinking about a niece who had recently died in the hospital. These statements now form the basis of a claim of ineffective assistance of counsel in failing to assert the defense of intoxication.

"An appellant assumes a heavy burden when he undertakes to establish the incompetence of his trial counsel." Smith v. United States, D.C.App., 235 A.2d 574, 575 (1967). And while voluntary intoxication may be a valid defense to a crime requiring proof of specific intent,[6] two isolated statements that appellant had been drinking on the night in question fall far short of a showing that counsel was incompetent or that appellant had less than a fair trial. There must be more substance to a claim that errors in judgment in trial tactics, if errors they be, were prejudicial to a defendant. The charge of ineffective assistance of counsel is not to be lightly made, nor do we lightly dismiss it, but on the record here we find no error.

It is also alleged that consecutive sentences should not have been imposed in these cases. Appellant recognizes that this court has upheld consecutive sentences for assault and possession of a prohibited weapon in Cooke v. United States, D.C.App., 213 A.2d 508 (1965), but urges that the recent case of Irby v. United States, 129 U.S.App.D.C. ——, 390 F.2d 432 (1967), now compels a different result. In its consideration of the problem of consecutive sentencing in *Irby* the United States Court of Appeals said:

[T]here are circumstances where it cannot safely be assumed that simply because the legislature has defined two separate crimes with differing elements and prescribed separate punishments for them, it contemplated that such punishments can be consecutively inflicted. The nature of

---

3. Cf. Hill v. State, 151 Tex.Cr.R. 299, 207 S.W.2d 413 (1948); State v. McCullough, 101 Kan. 52, 165 P. 644 (1917).

4. People v. Meyer, 405 Ill. 487, 91 N.E.2d 425, cert. denied, 340 U.S. 836, 71 S.Ct. 19, 95 L.Ed. 613 (1950); Cook v. State, 119 Ga. 108, 46 S.E. 64 (1903).

5. Clemmons v. State, 43 Fla. 200, 30 So. 699 (1901).

6. Womack v. United States, 119 U.S.App. D.C. 40, 336 F.2d 959 (1964); Heideman v. United States, 104 U.S.App.D.C. 128, 259 F.2d 943 (1958), cert denied, 359 U.S. 959, 79 S.Ct. 800, 3 L.Ed.2d 767 (1959).

the two criminal specifications, and of the course of conduct in which both crimes may be thought to have been committed, may be such as to raise a doubt as to a legislative purpose to encompass both punishments. In such a case, an aid to the divination of such purpose in the form of a so-called "rule of lenity" has been devised to the end of barring double punishment where there is substantial doubt as to whether Congress would have intended it to be imposed. (390 F.2d at 433)

Heretofore as in *Cooke,* the test applied to determine identity of offenses was whether the same evidence was needed to prove both and if this same evidence test were dispositive here we would have serious doubts as to the propriety of the consecutive sentences imposed. However, our reading of the majority opinion in *Irby* indicates to us that the same evidence test, if still viable,[7] is useful only when there is a substantial doubt as to congressional intent. We find no such doubt here. The legislative history of D.C.Code 1967 § 22–3214(b) [8] indicates that it was the intent of Congress to strengthen the control over possession of weapons in the District of Columbia. Cooke v. United States, 107 U.S. App.D.C. 223, 225, 275 F.2d 887, 889 (1960); Degree v. United States, D.C.Mun.App., 144 A.2d 547 (1958); United States v. Shannon, D.C.Mun.App., 144 A.2d 267 (1958). It points out that the possession of certain weapons is in itself a danger to society, and while this danger is inextricably tied up with the high incidence of aggravated assaults in the District of Columbia, we think it clear that Congress meant to prohibit possession of certain weapons as a separate deterrent from those already existing for assaults. Accordingly, it was permissible for the trial judge to impose consecutive sentences for the two offenses.

Affirmed.

7. See concurring opinion of Judge Leventhal in the *Irby* case.

8. H.R.Rep. No. 3244, 81st Cong., 2d Sess. (1951); H.R.Rep. No. 538, 82d Cong., 1st Sess. (1951); S.Rep. No. 1989, 82d Cong., 2d Sess. (1952).