Carl E. JONES, Appellant,

v.

UNITED STATES, Appellee.

No. 13632.

District of Columbia Court of Appeals.

Argued Feb. 8, 1979.

Decided April 18, 1979.

Elizabeth M. Williams, Baton Rouge, La., appointed by this court, for appellant.

Andrea L. Harnett, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry, Michael W. Farrell and Stephen R. Spivack, Asst. U. S. Attys., Washington D. C., were on the brief, for appellee.

Before NEBEKER and YEAGLEY, Associate Judges, and MOORE, Associate Judge, Superior Court of the District of Columbia.*

YEAGLEY, Associate Judge:

Appellant pled guilty to one count of simple assault (D.C.Code 1973, § 22–504) and one count of possession of a prohibited weapon (D.C.Code 1973, § 22–3214(b)). He was sentenced to one year's imprisonment on each count, the sentences to run consecutively, but sentence was suspended and appellant placed on 2½ years' supervised probation instead. Subsequently, his probation was revoked and he was committed under the sentence imposed when the court determined, after a hearing, that appellant had willfully failed to inform either the court or the probation officer that criminal charges were pending against him in California at the time of sentencing. Two issues are

* Sitting by designation pursuant to D.C.Code 1973, § 11–707(a).

before this court on appeal: (1) whether the imposition of consecutive sentences was improper, and (2) whether the court abused its discretion in revoking appellant's probation. We find no error and affirm.

Originally appellant was indicted on two counts of assault with intent to kill while armed (D.C.Code 1973, §§ 22–501, –3202), two counts of assault with intent to kill (D.C.Code 1973, § 22–501) and two counts of assault with a dangerous weapon (D.C.Code 1973, § 22–502). His first trial ended in a mistrial due to comments made by the prosecutor in closing argument. Appellant was retried on October 11, 1977, but after the close of the government's case he agreed to enter a guilty plea to one count of simple assault and one count of possession of a prohibited weapon, lesser included offenses of count 4 of the indictment, which had charged appellant with assault with intent to kill while armed.[1] The government made no proffer of facts in support of conviction because the court incorporated by reference the trial testimony. That testimony revealed that appellant and a codefendant, Windle C. Bird, had entered into a scheme to sell heroin with the two complaining witnesses, Jacob Sherill and Joseph W. Jackson. When Sherill and Jackson returned to Jackson's apartment from their first sale and told appellant and Bird, who had arranged to meet them there, that they had been robbed of the proceeds, Bird drew a gun and threatened to kill Sherill and Jackson; appellant stood by. In a moment of inattention by Bird, Jackson jumped Bird, and Bird fired the gun, wounding both Jackson and Sherill. In an effort to assist Bird, appellant picked up a furniture leg lying on the floor and began beating Jackson, but Jackson nevertheless was able to eject both Bird and appellant from his apartment. It was appellant's attack on Jackson with the chair leg that formed the factual basis for the charge of assault with intent to kill listed in count 4 of the indictment.

## CONSECUTIVE SENTENCES

Appellant asserts that his taking up of the furniture leg and his beating of Jackson comprise one continuous transaction which may constitute two separate offenses, but cannot give rise to consecutive sentences. This contention is without merit.

■ There is a statutory preference in this jurisdiction that consecutive sentences be imposed when an individual is convicted of two or more offenses, even if the convictions arise out of the same act or transaction. D.C.Code 1973, § 23–112. Nevertheless, a rule of lenity is invoked and concurrent sentences prescribed when a single act or transaction constitutes two criminal offenses, *Bell v. United States,* 349 U.S. 81, 83, 75 S.Ct. 620, 99 L.Ed. 905 (1955), unless (1) the offenses are separate and distinct, *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), and (2) there is a clear legislative intent to provide for consecutive punishment. *Gore v. United States,* 357 U.S. 386, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958); *Bell v. United States, supra.*

■ Two offenses are separate and distinct when each criminal provision violated requires proof of an additional fact which the other does not. *Blockburger v. United States, supra* at 304, 52 S.Ct. 180. Our decisions clearly disclose that assault and possession of a prohibited weapon are separate and distinct offenses. *See Walden v. United States,* D.C.App., 351 A.2d 515 (1976); *Jenkins v. United States,* D.C.App., 242 A.2d 214 (1968); *Cooke v. United States,* D.C.App., 213 A.2d 508 (1965). To support a conviction for assault the government must prove an attempt or effort with force or violence to inflict bodily harm with apparent present ability to carry out the attempt or effort. There is no requirement of possession. The weapons charge, on the other hand, demands proof of possession and a specific intent to use the weapon unlawfully against another, but does not

1. The plea was entered under the doctrine of *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), which allows a defendant to plead guilty without admitting the commission of the acts underlying the offense and without incurring civil liability.

require evidence of an attempt to do harm. Because each offense requires proof of at least one element not contained in the other, they are separate and distinct. *Id.*

The legislative history of § 22–3214(b), the weapons possession statute, reveals it was Congress' intent.

> to strengthen the control over possession of weapons in the District of Columbia. It points out that the possession of certain weapons is in itself a danger to society, and while this danger is inextricably tied up with the high incidence of aggravated assaults in the District of Columbia, we think it clear that Congress meant to prohibit possession of certain weapons as a separate deterrent from those already existing for assaults. [*Jenkins v. United States, supra* at 217.] (Citations omitted.)

On the basis of this legislative desire for enhanced punishment for possession of weapons, we sustained consecutive sentences for assault and possession of a prohibited weapon in *Jenkins,* where the weapon used was a blank pistol. We similarly upheld consecutive sentences for the same two offenses in *Walden v. United States, supra,* where the weapon used was a utility knife. A furniture leg may also be a dangerous weapon and its momentary possession supportive of a conviction for possession of a prohibited weapon in violation of § 22–3214(b). *See United States v. Brooks,* D.C.App., 330 A.2d 245 (1974). Since assault and possession of a prohibited weapon are separate and distinct offenses, the legislative intent to impose enhanced punishment for the latter offense is applicable. The record provides factual support for the trial court's acceptance of appellant's guilty plea. Hence, we find no illegality and sustain the imposition of consecutive sentences.

Appellant has suggested that this court may review the trial court's decision to sentence consecutively and impose concurrent sentences if we find an abuse of discretion. Appellant misapprehends our scope of review. We may only decide whether the sentence imposed was legally permissible since no statute in this jurisdiction authorizes appellate review of the trial court's sentencing decision. Once we have determined that the sentence was permitted by law, as we have in this case, we may not question its severity. *Foster v. United States,* D.C.App., 290 A.2d 176 (1972). Thus, for example, if a sentence is within the limits set by statute, we may not reduce the sentence. *Williams v. United States,* D.C.App., 293 A.2d 484, 486 (1972). By the same token, we are precluded from reviewing a trial court's decision to prescribe consecutive sentences or for that matter, concurrent sentences, for two separate offenses.

The rule of lenity which courts invoke to sentence concurrently rather than consecutively when a single act or transaction constitutes two criminal offenses, *see* p. 475 *supra,* is not to the contrary. It is not a rule of discretion, it is a rule of statutory construction which requires a court to construe a penal statute so it will apply in the least onerous fashion when the statute is capable of more than one reasonable construction. *See Henson v. United States,* D.C.App., 399 A.2d 16, 20–21 (1979). When the conditions for the operation of the rule exist, the court cannot sentence consecutively. When, as in the instant case, the conditions for lenity are not present the court may sentence consecutively or concurrently, but the decision to do so is not reviewable by this court.

## REVOCATION OF PROBATION

Appellant asserts that the trial court abused its discretion in revoking his probation because there was no basis for a finding that he willfully deceived the court and the probation office into believing he had no outstanding charges at the time of his sentencing. The testimony at the revocation hearing, the chronology of events pertinent to sentencing and revocation, and the trial court's assessment of appellant's understanding of the sentencing proceedings combine to defeat this argument.

The decision to suspend the sentence of one convicted of a crime and to

substitute probation for that sentence is committed by statute to the sound judgment of the trial court. D.C.Code 1973, § 16–710. Likewise it is provided by statute that revocation of probation is a matter of judicial discretion. D.C.Code 1973, § 24–104. As an appellate court we may not overturn a decision to revoke probation unless there has been an abuse of that discretion. *Burns v. United States,* 287 U.S. 216, 53 S.Ct. 92, 77 L.Ed. 511 (1932); *Stevens v. District of Columbia,* D.C.Mun.App., 127 A.2d 147 (1956). Appellant shoulders a heavy burden to establish an abuse of discretion, for the degree of proof required to support a court's decision to revoke probation is not as great as that required to sustain a conviction for the underlying offense. *United States v. D'Amato,* 429 F.2d 1284 (3d Cir. 1970); *see also United States v. Carrien,* 457 F.2d 808 (9th Cir. 1972); *United States v. Markovich,* 348 F.2d 238 (2d Cir. 1965).

 Appellant was indicted on these charges on December 1, 1976. While awaiting retrial after the first trial was aborted appellant was arrested in California on September 28, 1977, and charged with several counts of burglary. His retrial in the District of Columbia began on October 11, 1977, and his guilty plea was accepted by the court the following day. His sentence to consecutive terms was imposed on January 9, 1978. Sixteen days later, he pled guilty in California to one count of burglary and was sentenced to six months' incarceration. Upon learning of appellant's California conviction the Superior Court judge who had sentenced appellant issued a detainer for appellant's return to this jurisdiction and an order for appellant to show cause why his probation should not be revoked.

At the hearing the only two witnesses were probation counselors, John J. Walsh, who had prepared appellant's presentence report, and William Simpson, appellant's counselor at the time of the revocation hearing and his contact with the probation office after sentencing and while he was in California. Appellant chose not to testify.

Mr. Walsh testified that he had interviewed appellant on October 12, the day appellant pled guilty. During the interview Mr. Walsh asked appellant the question whether he had any prior arrests, to which appellant originally responded he did not, but later changed that response to indicate a 1975 arrest for burglary in Maryland, which he said had resulted in an acquittal. Mr. Walsh initially checked the box on the presentence report marked "First Offense", but when appellant changed his answer, wrote underneath the box "Burglary 2 1975?". Appellant did not mention his California arrest during the interview. Subsequent to that interview but prior to sentencing, Walsh spoke again with appellant, this time by telephone, regarding appellant's enrollment in law school in California. Appellant was not asked about other offenses and again he did not mention the California charges. Walsh completed the presentence report and submitted it to the court on December 1, 1977. In addition to the notations regarding appellant's arrest record, Mr. Walsh also indicated in the report that appellant was not on detainer and had no other pending charges. On cross-examination by appellant's counsel Walsh admitted that he had worked on the presentence report at times other than the interview, so that it was possible he made the notation at another time and not due to a specific response by appellant to his question about outstanding charges. Walsh also acknowledged that he had not consulted an FBI "rap sheet" before or during his conversation with appellant, which might have contained information regarding appellant's California arrest.

Mr. Simpson's testimony provided hearsay corroboration of Walsh's testimony that appellant had been asked by Walsh whether he had any outstanding arrests but had not provided a true and complete answer. Simpson also had interviewed appellant, on January 11, 1978, two days after sentencing, but did not ask him about outstanding arrests and appellant offered no such information.

Based upon appellant's failure to mention the California charges in response to Mr. Walsh's question regarding outstanding charges, the court determined that appellant had willfully misled authorities and it revoked appellant's probation. It is clear from the record that the court placed great reliance on its assessment of appellant as a very intelligent individual, who understood the importance of the California charges to sentencing in the District of Columbia.

Appellant offered no evidence to rebut Mr. Walsh's testimony that he had asked appellant about outstanding offenses and appellant had merely offered information concerning his Maryland arrest and acquittal. It was logical for the trial court to conclude that if appellant knew that the question encompassed an arrest resulting in acquittal, then he also knew it referred to arrests without disposition. Appellant was an intelligent individual, a college graduate at the time of sentencing, and about to become a law student. In fact, the court specifically provided that he could serve his probation in California in order that he might enroll in law school. During trial appellant ably aided in his own defense and at sentencing was able to understand the complex consequences of his *Alford* guilty plea. We agree the evidence supports a finding that appellant willfully misled the court and the probation office. We conclude that there was a substantial basis for the court's decision. Hence, we find no abuse of discretion and

*Affirm.*