Mohammed Abdul MANNAN, Petitioner,

v.

**DISTRICT OF COLUMBIA BOARD OF MEDICINE, Respondent.**

No. 87–1255.

District of Columbia Court of Appeals.

Argued Dec. 15, 1988.
Decided May 4, 1989.

John G. Gill, with whom Leonard P. Bienvenu, Rockville, Md., was on the brief, for petitioner.

Susan S. McDonald, Asst. Corp. Counsel, with whom Frederick D. Cooke, Jr., Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on the brief, for respondent.

Before ROGERS, Chief Judge, and MACK and STEADMAN, Associate Judges.

ROGERS, Chief Judge:

Petitioner Mohammed Abdul Mannan seeks reversal of the October 6, 1987, order of the Board of Medicine revoking his li-

cense to practice medicine in the District of Columbia pursuant to D.C.Code § 2–3305.14(a)(8) (1988 Repl.) for "[w]illfully mak[ing] or fil[ing] a false report or record in the practice of a health occupation." On procedural grounds he contends that the Board's order should be reversed because the Board relied on a repealed statute in its notice of intent to revoke his license and failed to comply with the statutory time limit for issuance of its decision; the former contention is meritless and the latter contention is not properly before us since it was not raised before the Board. He also contends that the Board's finding under District of Columbia law of willfulness, based on documentary evidence of a Maryland criminal proceeding, is not supported by reliable, probative and substantial evidence, and that he was denied the process which he was due at the hearing before the Board. We agree with both contentions. Accordingly, we reverse and remand with instructions to the Board to vacate its order of October 6, 1987, without prejudice to the commencement of de novo proceedings.

I

The facts are largely undisputed. Dr. Mannan received his license to practice medicine in the District of Columbia in 1979. He is also licensed in Maryland and Michigan. On March 29, 1985, Dr. Mannan was charged in the Circuit Court for Baltimore City, Maryland, Criminal Division, with Medicaid fraud in violation of MD. CODE ANN. art. 27, § 230C (1987 Repl.),[1] based on allegations that he had overbilled the Maryland Medicaid Assistance Program on 1,401 occasions from July 1, 1981, through June 30, 1983. Dr. Mannan, on the advice of his attorney, agreed to be placed on "probation prior to judgment" pursuant to MD.CODE ANN. art. 27, § 641 (1987 Repl.).[2] At the May 7, 1985, hearing

---

**1.** Medicaid fraud is defined in MD.CODE ANN. art. 27, § 230B as, among other things, "[k]nowingly and willfully making or causing to be made any false statement or representation of a material fact in any application for any benefit or payment under a State plan established by Title XIX of the Social Security Act of 1939."

**2.** MD.CODE ANN. art. 27, § 641 (1987 Repl.) provides, in relevant part:

**Probation prior to judgment; power of court to provide terms and conditions; intoxicated drivers; violation of probation; fulfillment of terms of probation.**

(a) *Probation after plea or finding of guilt; power of court to provide terms and condi-*

in the Maryland court, Dr. Mannan's attorney (Mr. Denholm), the prosecutor (Mr. Baer), and the judge had the following discussion concerning Dr. Mannan's plea pursuant to the probation agreement:

THE COURT [to Dr. Mannan]: Have a seat on the witness stand. Speak clearly into the microphone. Your lawyer will ask you questions to make sure your plea is guilty and voluntary.

MR. DENHOLM: Most respectfully, this is a not guilty, statement of facts. The prosecutor agrees.

MR. BAER: Your Honor, in chambers we had discussed a guilty plea. Afterwards Mr. Denholm suggested we do it the other way. Whatever is amenable to the Court.

MR. DENHOLM: The prosecutor will just read the facts into the case.

THE COURT: I understand that, but I have never taken any pleas other than a guilty plea.

MR. DENHOLM: The only other option is an Alford[3] plea.

THE COURT: I will accept an Alford plea.

MR. DENHOLM: I would like a not guilty, statement of facts. It's very important to us. We are not going to contest the facts. The facts are as the prosecutor will present them.

THE COURT: All right, come off the witness stand.

A statement of facts was read, but not transcribed, into the record of the Maryland proceedings. According to the docket entry, Dr. Mannan pled "Not Guilty (Statement of Facts)" to the charge and the court's verdict was "Guilty ... Medicaid Fraud. Judgment Stayed Under Art. 27 Sect. 641." The Maryland court placed Dr. Mannan on probation for five years, and required him to make restitution of $68,071.95[4] to the Maryland Medical Assistance Program and to perform 300 hours of community service. He was permitted, however, to continue practicing medicine in Maryland without restrictions on his license.[5]

Dr. Mannan's license to practice medicine in the District of Columbia expired on December 31, 1986. Upon applying for renewal, Dr. Mannan informed the District of Columbia Board of Medicine of the Maryland Medicaid fraud charge and his probationary status. On June 6, 1986, the Board sent Dr. Mannan a Notice of Intent to Revoke License for professional misconduct (1) under D.C.Code § 2–1326(d)(2)(C)

---

*tions; waiver of right to appeal from judgment of guilt.*—(1)(i) Whenever a person accused of a crime pleads guilty or nolo contendere or is found guilty of an offense, a court exercising criminal jurisdiction, if satisfied that the best interests of the person and the welfare of the people of the State would be served thereby, and with the written consent of the person after determination of guilt or acceptance of a nolo contendere plea, may stay the entering of judgment, defer further proceedings, and place the person on probation subject to reasonable terms and conditions as appropriate.

. . . . .

(3) By consenting to and receiving a stay of entering of the judgment as provided by this subsection, the person waives the right to appeal from the judgment of guilt by the court at any time. Prior to the person consenting to the stay of entering of the judgment, the court shall notify the person that by consenting to and receiving a stay of entry of judgment, the person waives the right to appeal from the judgment of guilt by the court at any time.

(b) *Violation of probation.*—Upon violation of a term or condition of probation, the court may enter judgment and proceed with disposition of the person as if the person had not been placed on probation.

(c) *Fulfillment of terms of probation.*— Upon fulfillment of the terms and conditions of probation, the court shall discharge the person from probation. The discharge is final disposition of the matter. *Discharge of a person under this section shall be without judgment of conviction and is not a conviction for purposes of any disqualification or disability imposed by law because of conviction of crime.* (Emphasis added.)

3. *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

4. According to Dr. Mannan, the overbillings equalled $22,690.65, and this amount was trebled under Maryland law to $68,071.95. The record suggests that the Board was aware that the $68,071.95 represented treble damages and not total overbillings.

5. Dr. Mannan testified that Medicaid allowed him to continue accepting Medicaid patients as well.

(1981), based on his "conviction" in Maryland, and (2) under D.C.Code § 2–1326(d)(6) (1981), for willfully making and filing false reports with the Maryland Medical Assistance Program.[6] Dr. Mannan denied both charges.

At a hearing before three members of the Board—two lay persons and a medical doctor-the government introduced, over Dr. Mannan's objection, six exhibits relating to the Maryland court proceeding: (1) a certificate of the Clerk of the Circuit Court of Baltimore City verifying the court documents; (2) the docket sheet from the Maryland proceeding; (3) Dr. Mannan's probation order; (4) a copy of Count One of the Medicaid fraud indictment; (5) a copy of MD.CODE ANN. art. 27, § 641; and (6) a three-page transcript of Dr. Mannan's plea in the Maryland proceeding. Dr. Mannan responded to the charges by arguing that he had not been "convicted" in the Maryland proceeding and that his Medicaid overbillings were not "willful."

To refute the willfulness charge, Dr. Mannan presented evidence that, as a result of his medical training and practice in England where the medical system is nationalized and doctors do not become involved in billing, he was thoroughly unfamiliar with the American system of medical billing at the time of the overbillings; that he had given complete control over his office billing procedures to his assistants, and that the overbillings were due to their inexperience and errors; that his practice was located in an economically depressed area where a majority of his patients were on medical assistance; and that his assistants had mistakenly underbilled on numerous occasions as well. He disputed the government's contention that his plea at the Maryland proceeding could be used as a finding of guilt of willful Medicaid fraud in a subsequent proceeding since, due to the nature of the plea, he had never admitted guilt.[7] Dr. Mannan also informed the Board that the Maryland Commission on Medical Discipline was about to clear him of a similar charge, and later sent the Board a copy of the Commission's order to that effect.[8] Finally, Dr. Mannan introduced into evidence two documents submitted by the Executive Director of the Prince George's Medical Society to the Medical and Chirurgical Faculty of the State of Maryland. The first document stated that Dr. Mannan had "no plan or intent to willfully defraud the Medicaid Program, but rather [was] a victim of [the] cumbersome billing process." Attached to this letter were statements from two of Dr. Mannan's assistants confirming that he did not become involved in the billing process and that he had no knowledge of the Medicaid billing codes. The second document was a letter attributing the coding errors to an inexperienced clerk, noting that Dr. Mannan's records accurately reflected the services he had provided, and concluding that what was involved was "a codification problem and not a willful and knowing act to defraud the government."[9] The Board refused to let Dr. Mannan present two experts on the

---

6. As discussed in Part II, *infra,* the references in the Board's June 6, 1986, notice to D.C.Code § 2–1326(d)(2)(C) and (d)(6) were erroneous. These provisions were part of a statutory scheme which was replaced as of March 25, 1986, by the District of Columbia Health Occupations Revision Act of 1985, D.C. Law 6–99, 33 D.C.Reg. 729 (1986) (the Revision Act), D.C.Code § 2–3301.1 *et seq.* (1988 Repl.).

7. In his brief, Dr. Mannan notes that his defense counsel told him in front of the Maryland judge, "You understand that you have no right to appeal this because there has been no finding; you understand that?", to which Dr. Mannan replied, "Yes, sir."

8. The Maryland Commission dismissed the charge against Dr. Mannan of willfully making or filing a false report in the practice of medi- cine, and only reprimanded him for allowing one of his employees to submit incorrect billing codes under his signature. *See* Maryland Commission on Medical Discipline, Findings of Fact, Conclusions of Law and Order, December 2, 1986. The Commission stated that Dr. Mannan was never convicted of, and pled not guilty to, theft and Medicaid fraud.

9. Along with the second document was a letter from Dr. Mannan's Maryland attorney stating his opinion that the probation-before-judgment proceeding under MD.CODE ANN. art. 27, § 641, could not be used against a defendant "in any form in any court in the State of Maryland or anywhere else."

complex nature of the Maryland Medicaid billing code system, and also refused to hear Dr. Mannan's explanation of the circumstances forming the basis of the charges in the Maryland indictment, claiming that Dr. Mannan was trying to "retry the case" and "wasting the time of the Board."

On October 6, 1987, the Board dismissed the charge against Dr. Mannan regarding the conviction,[10] but found that, notwithstanding the absence of a conviction, the Maryland court heard "uncontested evidence" from which it determined "beyond a reasonable doubt" that Dr. Mannan was guilty of Medicaid fraud in violation of MD.CODE ANN. art. 27, § 230C. The Board reasoned that this finding, "viewed in the context of approximately 1,400 separate instances of over-billing," amply supported the conclusion that Dr. Mannan willfully filed false reports with the Maryland Medical Assistance Program in violation of D.C. Code § 2–1326(d)(6) (1981), "now codified as D.C.Code § 2–3305.14(a)(8) (1986 Supp.)." As a result, the Board revoked Dr. Mannan's license to practice medicine in the District of Columbia and barred him from applying for reinstatement for five years; he also was barred, after the five-year period expired, from applying for reinstatement or initial licensure more than once a year.

## II

We first address the procedural contentions. Dr. Mannan contends that the Board did not have jurisdiction to take administrative action in his case because the Board's June 6, 1986, revocation notice relied on a statute which had been repealed.[11] The notice was never amended, and Dr.

Mannan claims that the Board considered the charges and made its decision under the repealed law. He does not contend, however, that he was denied adequate notice of the charges against him or otherwise prejudiced, only that the Board lacked jurisdiction because of the faulty revocation notice.

The Board has broad jurisdiction to regulate the practice of medicine and to impose a variety of disciplinary sanctions upon persons applying for or renewing their license to practice medicine in the District of Columbia who are found to have violated any of the provisions of the Revision Act.[12] As Dr. Mannan acknowledges, the Board's final order suspending his license referred to the correct statute. Thus, contrary to his assertion, the Board did not base its decision on the repealed law. Furthermore, Dr. Mannan claims no prejudice as a result of the error in the Board's notice and was well aware of the charges made against him. His argument that the new statute differs in any material way from the repealed statute, moreover, is unfounded.[13] The same conduct was cause for discipline under both statutes and the same disciplinary sanctions existed for such conduct. *See New Palm Gardens, Inc. v. Alcoholic Beverages Control Comm'n,* 11 Mass. App.Ct. 785, 786–90, 420 N.E.2d 8, 11–12 (1981) (alcohol commission's reference to wrong statute in notice of hearing and decision was not basis for overturning the decision where licensee was well aware of the charges made against it and commission referred to correct statute in its statement of reasons). *Cf. Peters v. District of Columbia,* 84 A.2d 115, 117 (D.C.1951) (juvenile court had jurisdiction over paternity proceeding though the child was born be-

**10.** On appeal the government has conceded that, under MD.CODE ANN. art. 27, § 641, there was no "conviction."

**11.** Dr. Mannan first raised this issue in his reply brief. Subject matter jurisdiction is subject to review at any time. *See Smith v. District of Columbia Dept. of Employment Servs.,* 494 A.2d 1340, 1342 (D.C.1985) (citing *In re Estate of Dapolito,* 331 A.2d 327, 328 (D.C.1975) and *Paton v. District of Columbia,* 180 A.2d 844, 845 (D.C.1962)).

**12.** *See* D.C.Code §§ 2–3302.3(a)(2), –3305.14(a), (c) (1988 Repl.).

**13.** Dr. Mannan notes that D.C.Code § 2–1326(d)(6) (1981) forbade "willfully making or filing false reports or records ... *required by law,*" whereas the current statute, D.C.Code § 2–3305.14(a)(8) (1988 Repl.), forbids one to "willfully make or file a false report or record *in the practice of a health occupation.*" (Emphasis added.)

fore approval of the statute under which the proceeding was brought, and statute had prospective effect only).[14] Accordingly, we hold that the Board had jurisdiction to impose discipline on Dr. Mannan upon a finding that he violated the Revision Act.

■ Dr. Mannan also contends that the Board's failure to render a final decision within sixty days after the hearing as required by D.C.Code § 2–3305.19 (1988 Repl.) was reversible error. Because the Board has the dual obligation to protect both the public and persons licensed under District of Columbia law, *see Sherman v. Comm'n on Licensure to Practice the Healing Art*, 407 A.2d 595, 601 (D.C.1979) (provisions of District of Columbia Administrative Procedures Act "provide a wide range of safeguards for the public and for physicians against erroneous license revocation"), the legislature's determination that Board decisions should be promptly rendered is significant. This case illustrates the problem. The Board delayed issuing proposed findings in this matter until August 1987, nine months after the December 1986 hearing; two months later the final order was issued. Since Dr. Mannan was unable to obtain a stay of his suspension pending this appeal, he has now been suspended for over a year and a half. While a more prompt decision by the Board would not eliminate the delay attributable to the appellate process, the Board cannot ignore its statutory mandate. *See Harris v. District of Columbia Rental Hous. Comm'n*, 505 A.2d 66, 71 (D.C.1986) (length of proceedings before administrative agencies a matter of major concern) (citations omitted); *Wisconsin Ave. Nursing Home v. District of Columbia Comm'n on Human Rights*, 527 A.2d 282, 285–87 (1987) (prejudice from lengthy administrative agency delay can be so substantial in some cases as to require dismissal of the administrative action).

Nevertheless, we conclude that reversal on this ground is not warranted. Dr. Man-

nan failed to raise the allegation of undue delay in his exceptions to the Board's proposed decision, and thus we will not address it on appeal. *See Hughes v. District of Columbia Dep't of Employment Servs.*, 498 A.2d 567, 570 (D.C.1985). *See also Harris, supra*, 505 A.2d at 71 (proper remedy for unwarranted delay in administrative proceedings is court order expediting same) (citing D.C.Code § 1–1510(a)(2) (1981)). Moreover, in view of the governmental interests at stake, § 2–3305.19(h) appears to be more in the nature of a precatory directive than a jurisdictional prerogative. *Cf. Hughes, supra*, 498 A.2d at 571 n. 8 (citations omitted). *See also Thomas v. Barry*, 234 U.S.App.D.C. 378, 379 n. 5, 729 F.2d 1469, 1470 n. 5 (1984) (general rule that statutory time period is not mandatory unless it expressly requires agency to act within a particular time period *and* specifies a consequence for failure to comply) (citations omitted)).

### III

■ The principle that an agency order must be accompanied by findings of fact and conclusions of law on each contested issue which are supported by reliable, probative and substantial evidence is particularly compelling where agency action is predicated upon a licensing act conferring broad latitude on the agency. *See Village Books, Inc. v. District of Columbia Bd. of Appeals and Review*, 296 A.2d 613, 614–15 (D.C.1972). *See also Sherman, supra*, 407 A.2d at 597 & n. 3; D.C.Code § 1–1510(a)(3)(A) & (E) (1987 Repl.). The requirements of substantial evidence are well settled. *See, e.g., Jadallah v. District of Columbia Dep't of Employment. Servs.*, 476 A.2d 671, 676 (D.C.1984) (substantial evidence is "such evidence as a reasonable mind might accept as adequate to support a conclusion"; it is more than a mere scintilla) (citations omitted); *Scott v. Police and Firemen's Retirement and Re-*

---

**14.** Dr. Mannan's reliance on *Hija Lee Yu v. District of Columbia Rental Hous. Comm'n*, 505 A.2d 1310 (D.C.1986), is misplaced since that case involved the converse of what occurred here. Yu cited the new rules in her notice of appeal, but wanted to rely on an old rule regarding the time period for filing the appeal. Here the Board cited the repealed statute in its revocation notice, but the Revision Act in its final order.

*lief Bd.*, 447 A.2d 447, 449 (D.C.1982) (citation omitted). We hold that the Board's finding that Dr. Mannan willfully filed false medical reports under D.C.Code § 2–3305.14(a)(8) is not supported by substantial evidence because the documentary evidence of the Maryland criminal proceeding, upon which the Board based its finding, did not establish a willful violation of law. It is unclear from the record whether the issue of willfulness was established at the Maryland proceeding since the precise nature of Dr. Mannan's plea is unclear, the statement of facts from that proceeding was not before the Board, and Dr. Mannan never admitted willfulness or guilt in either proceeding, but presented considerable evidence to the Board refuting willfulness.

 To impose disciplinary sanctions under D.C.Code § 2–3305.14(a)(8), the Board had to find that there was substantial evidence that Dr. Mannan willfully made or filed a false report or record in his practice as a physician. Although the word "willfully" has different meanings in different contexts, *see Hager v. District of Columbia Dep't of Consumer and Regulatory Affairs*, 475 A.2d 367, 368 (D.C. 1984) (citing *Spies v. United States*, 317 U.S. 492, 63 S.Ct. 364, 87 L.Ed. 418 (1943)), in civil or administrative proceedings, the term is most often defined as that which is intentional, rather than inadvertent or accidental. *Hager, supra*, 475 A.2d at 368 (citation omitted). While the evidence need not show an intent to do harm, it must demonstrate a conscious indifference to consequences under circumstances likely to cause harm. *See Sherman, supra*, 407 A.2d at 600 (citing *Bohannon v. District of Columbia Dep't of Motor Vehicles*, 288 A.2d 672, 675 (D.C.1972)). Also, when imposing a civil penalty or forfeiture, an agency can hold an employer liable for the acts of an employee only upon a showing of culpable fault or omission by the employer, in the absence of a contrary statutory intent. *See Vann v. District of Columbia Bd. of Funeral Directors and Embalmers*, 480 A.2d 688, 693 (D.C.1984) (citing *Greene v. Real Estate Comm'n*, 218 A.2d 508, 511 (D.C.1966) and *Davis v. Missouri Real Estate Comm'n*, 211 S.W.2d 737, 740 (Mo.

1948)). Since the Revision Act expresses no contrary intent, and since there was no evidence refuting Dr. Mannan's contention that his assistants were responsible for the overbillings, the Board must have found at a minimum that Dr. Mannan's lack of supervision over his assistants with respect to the billing process rose to the level of culpable fault or omission. The Board then must have found that Dr. Mannan was consciously indifferent to the consequences of his failure to monitor his assistants regarding billing matters.

The Board relied almost exclusively on the documents from the Maryland proceeding as proof that Dr. Mannan committed a willful violation of District law. Dr. Mannan contends that the nature of his plea in the Maryland proceeding and the policy underlying that statutory proceeding, pursuant to MD.CODE ANN. art. 27, § 641, preclude the use of those documents to establish a separate violation under District of Columbia law. The government, conceding that its was "a paper case" and that it relied on the Maryland proceeding as evidence of Dr. Mannan's willful violation under D.C.Code § 2–3305.14(a)(8), maintains that notwithstanding the absence of a "conviction" in the Maryland proceeding, the finding of guilt establishes willfulness under D.C.Code § 2–3305.14(a)(8). There are a number of difficulties with the government's position.

First, the Board prevented Dr. Mannan from explaining the circumstances of the 1,401 overbillings on the basis that he was trying to "retry the case." In doing so the Board seemed to be applying the doctrine of issue preclusion to Dr. Mannan's contention that the overbillings were not willful, and to be assuming from the Maryland finding of "guilt" that Dr. Mannan had committed willful violations of Medicaid fraud under Maryland law. The doctrine of issue preclusion, however, has strict requirements and nothing in the record suggests that the Board was aware of these requirements before refusing to permit Dr. Mannan to "retry" his case. For that doctrine to apply, moreover, the Board first had to determine the nature of the plea

that Dr. Mannan entered in the Maryland proceeding since the type of plea entered in a criminal proceeding determines the extent to which the findings from that proceeding can be used in a subsequent civil or administrative proceeding.

■ We recognize that it is not entirely clear from the Maryland transcript whether Dr. Mannan entered an *Alford* plea or a *nolo contendere* plea. One reading of the transcript tends to support the conclusion that Dr. Mannan entered an *Alford* plea. He seems to have acknowledged the existence of the alleged facts while insisting that he was not guilty, accepted the Statement of Facts, which allegedly established his guilt and were examined by the trial judge, offered the judge the option of taking an *Alford* plea, and stood silent when the judge said he would accept an *Alford* plea.[15] *See Alford, supra,* 400 U.S. at 34, 91 S.Ct. at 166; *Thornton, supra,* 73 Md. App. at 254 n. 3, 533 A.2d at 954 n. 3. On the other hand, his actions are consistent with a *nolo contendere* plea as well since he did not contest the alleged facts and the record does not make clear whether the judge's examination of the government's proffer rose to the level required by *Alford.* For a plea to be an *Alford* plea the record supporting the plea must show strong evidence of actual guilt for the plea

to be accepted by the judge.[16] The *Alford* plea thus lies somewhere between a plea of guilty and a plea of *nolo contendere,* where the defendant, while not admitting guilt, agrees not to contest the alleged acts for the purpose of the criminal case only and the judge accepting the plea has no obligation to determine whether there is a strong evidence of actual guilt. *See* Super. Ct.Crim.R. 11(b) & (f). On appeal Dr. Mannan contends that he did not enter an *Alford* plea and that "the best the documents showed was the equivalent of a "plea of *nolo contendere.*'"

■ The second determination that the Board had to make, which it also did not address, is what preclusive effect Dr. Mannan's plea, and the findings underlying his plea, would have in a subsequent administrative proceeding.[17] In the majority of jurisdictions, the plea of *nolo contendere* shields the defendant from subsequent civil liability; neither the alleged acts nor the finding of "guilt" from the criminal case can be used in a subsequent civil or administrative proceeding.[18] A plea of guilty, however, usually is admissible in subsequent civil litigation as an admission against interest but without preclusive effect since the issue was not "actually litigated and determined by a final and valid

---

**15.** The *Alford* plea comes from *North Carolina v. Alford, supra,* 400 U.S. at 35, 91 S.Ct. at 166 (individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime).

**16.** *See* Note, *The Alford Plea: A Necessary but Unpredictable Tool for the Criminal Defendant,* 72 Iowa L.Rev. 1063, 1070–71 (1987) (judges must be particularly careful to establish factual bases for *Alford* pleas). The Maryland statute refers only to pleas of guilty or *nolo contendere,* but it is not unusual for a court to accept an *Alford* plea in the absence of specific authorization by statute or court rule. *See, e.g.,* Super.Ct. Crim.R. 11(a); *Glass v. United States,* 395 A.2d 796, 799 n. 2 (D.C.1978); *State v. Thornton,* 73 Md.App. 247, 251–54 & n. 3, 533 A.2d 951, 953– 54 & n. 3 (1987), *cert. denied,* 312 Md. 127, 538 A.2d 778 (1988).

**17.** The general rule of collateral estoppel, or issue preclusion, is stated in the Restatement (Second) of Judgments § 27 (1982):

When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim. *quoted in Jonathan Woodner Co. v. Adams,* 534 A.2d 292 (D.C.1987); *Ali Baba Co., Inc. v. Wilco, Inc.,* 482 A.2d 418, 421 (D.C.1984). *See also* Note, *The Alford Plea, supra,* 72 Iowa L.Rev. at 1078 & n. 153. Similar considerations apply to subsequent litigation with other parties, as in the instant case. *See* Restatement (Second) of Judgments § 29 (1982).

**18.** *See* Super.Ct.Crim.R. 11(c)(4); *Agnew v. State,* 51 Md.App. 614, 652–54, 446 A.2d 425, 446 (1982) (subscribing to majority view that a statement made at the time of entering a *nolo contendere* plea and the plea itself are not admissible against a party in a subsequent civil proceeding); Annot., 89 A.L.R.2d 540, 600–03 (1963, 1979 & 1988 Supp.) (majority rule that *nolo contendere* plea is not an admission of guilt in civil proceedings).

judgment." RESTATEMENT (SECOND) OF JUDGMENTS § 27.[19] The collateral use of an *Alford* plea is less clear, and the issue has not been extensively litigated.[20] The rationale for not admitting a *nolo contendere* plea in a subsequent proceeding is that it was entered originally without the court's examination of the underlying facts. *See Alford, supra,* 400 U.S. at 35 n. 8, 91 S.Ct. at 166 n. 8 ("it was thought desirable to permit defendants to plead *nolo* without making any inquiry into their actual guilt"). It can be argued that an *Alford* plea similarly should not be given preclusive effect in a subsequent proceeding because, like the *nolo contendere* plea, there is no admission of guilt.[21] On the other hand, since an *Alford* plea can only be accepted when accompanied by strong evidence of guilt, it arguably might warrant more severe collateral consequences than a *nolo contendere* plea.[22]

We do not have to reach the issue of what preclusive effect should be accorded

---

**19.** *See also* 31A C.J.S. *Evidence* § 381(f) (1964) (guilty plea not ordinarily conclusive on pleader, but may be explained or rebutted in subsequent civil case in which plea is in evidence as an admission). This is the rule in Maryland. *See Brohawn v. Transamerica Ins. Co.,* 276 Md. 396, 403–05, 347 A.2d 842, 848 (1975) ("A plea of guilty to a criminal charge may be introduced in a subsequent civil proceeding as an admission. But this admission does not conclusively establish liability. Instead, it may be rebutted or explained in the subsequent civil case in which it is admitted.") (citations omitted). In the District, it is well established that a guilty plea represents an admission, *see In re Shillaire,* 549 A.2d 336, 343 (D.C.1988); *Frost v. Hays,* 146 A.2d 907, 908 (D.C.1958) (guilty plea properly received in subsequent civil proceeding as admission against interest), but the preclusive effect of the plea is still unclear.

**20.** *See* Note, *The Alford Plea, supra,* 72 IOWA L.REV. at 1063, 1076, 1084.

**21.** *See* Note, *The Alford Plea, supra,* 72 IOWA L.REV. at 1084 (no certainty of guilt to justify making *Alford* pleas preclusive).

**22.** *See, e.g., Crofoot v. United States Gov't Printing Office,* 761 F.2d 661, 665 & n. 1 (Fed.Cir. 1985). There is support in this jurisdiction, though, for not allowing an *Alford* plea to be used as evidence of guilt in a subsequent civil proceeding. *See Jones v. United States,* 401 A.2d 473, 473 n. 1 (D.C.1979) (*Alford* plea allows defendant to plead guilty without admitting the commission of the acts underlying the offense and without incurring civil liability) (citation omitted) (dictum). *In re Kerr,* 424 A.2d 94 (D.C. 1980) (*en banc*) is not to the contrary. In that case we affirmed the disbarment of an attorney convicted of a felony pursuant to a District of Columbia statute which required disbarment if an attorney was convicted of an offense involving moral turpitude. We noted, "Nor is the statutory provision any less operative by reason of [the defendant's] *Alford* plea. Although she thereby did not technically admit guilt, she nonetheless stood convicted of a felony." *Id.* at 97. Unlike the instant case, the discipline in *In*

re *Kerr* was imposed on the basis of a conviction in another proceeding; the *Alford* plea was not being used as preclusive proof of a wholly separate offense.

A few jurisdictions have held differently, but only where convictions resulted from *Alford* pleas. *See Crofoot, supra,* 761 F.2d at 665; *Graybill v. United States Postal Serv.,* 782 F.2d 1567, 1570 (Fed.Cir.), *cert. denied,* 479 U.S. 963, 107 S.Ct. 462, 93 L.Ed.2d 407 (1986) (judge imposed sentence before placing defendant on probation); *United States v. Krietemeyer,* 506 F.Supp. 289, 292 (S.D.Ill.1980); *Aid Ins. Co. (Mut.) v. Chrest,* 336 N.W.2d 437, 438 (Iowa 1983).

The *Graybill* case held that an employee who entered an *Alford* plea in state court to charges of sexual misconduct with his stepdaughter was collaterally estopped, under Maryland law, from introducing testimony of his claimed innocence before the federal Merit Systems Protection Board following the employee's suspension. In *Graybill,* the court found that the Merit Board only wanted to establish guilt as determined in the criminal proceeding, and not under a separate legal theory. 782 F.2d at 1572–73. *See also In re Kerr, supra,* 424 A.2d at 97. In the instant case, the Board did not base its revocation decision on the fact that Dr. Mannan had been found guilty in another jurisdiction, but rather on a separate statute requiring evidence of willfulness.

In *Merchants Mut. Ins. Co. v. Arzillo,* 98 A.D. 2d 495, 497–01, 472 N.Y.S.2d 97, 99–101, 105 (1984), the court gave an *Alford* plea preclusive evidentiary effect in a collateral insurance proceeding based on the trial court's lengthy explanation to the defendant in the criminal proceeding that his plea was a guilty plea and therefore an admission. *Merchants* is distinguishable since the discussion of Dr. Mannan's plea at the Maryland proceeding was neither lengthy nor clear. In a spirited dissent, Justice Gibbons in *Merchants* noted, "There is much to be said for the view that collateral estoppel should never attach where based solely on a[n] [*Alford*] plea, since in such a situation not only has there been no trial verdict of guilty, but the defendant, in pleading guilty, has not admitted the acts consti-

to Dr. Mannan's plea at a subsequent administrative hearing since, as the government concedes, there was no conviction in Maryland of Dr. Mannan and, therefore, there is no "valid and final judgment" from which the preclusive effect of the plea or the findings underlying the plea could be established.[23] Moreover, the record is devoid of evidence of the facts established at the Maryland proceeding since the statement of facts from that proceeding was not in evidence before the Board. "Unless the record of the prior proceeding affirmatively demonstrates that an issue involved in the second trial was definitely determined in the former trial, the possibility that it may have been does not prevent the relitigation of that issue." *Jonathan Woodner Co., supra,* 534 A.2d at 296 (quoting *Copening v. United States,* 353 A.2d 305, 309 (D.C. 1976)).

The government asks us to assume that a finding of guilty, and therefore willfulness, was made by the Maryland court, and contends that the Board took judicial notice of this finding. It relies on the fact that the docket entry referred to the word "guilty" and because Maryland case law requires a finding of guilt before probation can be imposed under § 641. While "[t]he most frequent use of judicial notice of ascertainable facts is in noticing the contents of court records," 21 C. WRIGHT & K. GRAHAM, FEDERAL PRACTICE AND PROCEDURE § 5106 at 505 (1977), that does not necessarily imply that a court accept as true all facts that are asserted in those records, *id.,* § 5104 at 483 (cited in *Jonathan Woodner, supra,* 534 A.2d at 297), particularly where,

as here, the statement of facts from the proceeding is not in evidence and it is impossible to determine exactly what facts were established in the Maryland proceeding. Obviously, we cannot affirm the Board's decision based on assumptions about the ultimate fact at issue, namely, Dr. Mannan's willfulness. *See Martin v. District of Columbia Police and Firefighter's Retirement and Relief Bd.,* 532 A.2d 102, 111 (D.C.1987). Revocation of a medical license is a serious matter, *see Sherman, supra,* 407 A.2d at 601, and must be clearly supported by evidence in the record.

The docket sheet entry of "guilty" can be understood only in the context of the § 641 proceeding. The Maryland Code authorizes the trial court to place a person accused of a crime on probation before rendering judgment. *See Myers v. State,* 303 Md. 639, 645–46, 496 A.2d 312, 315 (1985); MD.CODE ANN. art. 27, § 641. After the successful completion of probation, discharge under § 641 is without civil disability or disqualification as could occur with a criminal conviction. *Id.,* 496 A.2d at 316. Thus, even if a finding of guilt is required under § 641, the question remains as to the proper use that may be made of this finding to establish guilt or any other issue in a subsequent civil or administrative proceeding.[24] For instance, a Maryland case, *Tate v. Bd. of Educ.,* 61 Md.App. 145, 485 A.2d 688, *cert. denied,* 303 Md. 42, 491 A.2d 1197 (1985), suggests that a finding of guilt in a criminal proceeding at which an *Alford* plea was entered pursuant to a probation-

---

tuting the crime." 98 A.D.2d at 510–11, 472 N.Y.S.2d at 107 (citations omitted).

**23.** A plea of guilty without a conviction also cannot be used to impeach a witness in a subsequent criminal proceeding since it "lacks the trustworthiness and finality of a conviction." *Godfrey v. United States,* 454 A.2d 293, 305 (D.C. 1982). *See also Franklin v. United States,* 555 A.2d 1010 (D.C.1989) (guilty verdict without sentence not a conviction which can be used to impeach a witness in a criminal proceeding) (citing *Langley v. United States,* 515 A.2d 729, 734 (D.C.1986)). In *Godfrey,* the court noted as evidence of the lack of trustworthiness of such a plea that the complainant's testimony in that case "raise[d] doubt concerning her guilt despite her plea." *Godfrey, supra,* 454 A.2d at 305 n. 36.

**24.** The cases on this point cited by the government concern only (1) the revocation of probation in a collateral criminal proceeding, *see Horsey v. State,* 56 Md.App. 667, 672–75, 468 A.2d 684, 686–87 (1983), *cert. denied,* 299 Md. 426, 474 A.2d 218 (1984); *Stevens v. State,* 34 Md. App. 164, 169–72, 366 A.2d 414, 418–19 (1976); (2) the use of the finding of guilt under § 641 to impeach a witness, *Ogburn v. State,* 71 Md.App. 496, 500–01, 526 A.2d 614, 616 (1987), *cert. denied,* 311 Md. 145, 532 A.2d 1372 (1987), which is an acceptable use even of a *nolo* plea, *see* Annot., *supra,* 89 A.L.R. at 611; and (3) a determination that since a witness was not convicted under the probation statute, he was competent to testify at a subsequent trial, *Myers, supra,* 303 Md. at 647–48, 496 A.2d at 316.

before-judgment statute should not be used as evidence of guilt in a subsequent administrative proceeding.[25]

■ In light of the ambiguous and confusing plea proceeding, the absence of the statement of facts presented in connection with the plea, and a Maryland statute providing for non-entry of judgment, the Board erred in refusing to afford Dr. Mannan a full opportunity to present all of the relevant facts underlying the charges. *See Martin, supra,* 532 A.2d at 113; *see also* D.C.Code § 1–1509(b) (1987 Repl.); D.C. Code § 2–3305.19(a) (1988 Repl.). While technical rules of evidence do not govern agency proceedings, *see Martin, supra,* 532 A.2d at 109, this principle is supposed to encourage the admissibility of evidence at administrative hearings, not hinder it. *Id.* The Board, no less than the court in deciding attorney discipline cases, must be fully advised of the relevant facts. *See, e.g., In re Goldberg,* 460 A.2d 982, 985–86 (D.C.1983) (in attorney discipline case, court remanded record to Board of Professional Responsibility for factual findings on issue for which there was no evidence on record, notwithstanding factual representations of counsel).

The record shows that not all three members of the Board who attended the hearing were adequately briefed on the legal implications of Dr. Mannan's plea and the § 641 proceeding. Board members questioned how Dr. Mannan could claim he was not guilty of willfully violating Maryland's Medicaid reporting laws when he had agreed to perform 300 hours of community service and pay the Maryland Medicaid program over $66,000. Further confusion is evident from a Board member's comment that Dr. Mannan was wasting the Board's time by trying to retry the Maryland case. These comments reflect miscomprehension of the plea proceeding and suggest confusion about the nature of the proof that was required to prove a separate offense under District of Columbia law. Nor is it clear that the Board members understood the relevance of Dr. Mannan's testimony that his prior attorney may have given him inaccurate advice regarding the plea at the § 641 proceeding. This testimony goes directly to the question of the reliability of findings made in such a situation. In addition, for unexplained reasons, the Board ignored Dr. Mannan's evidence that the Maryland Commission on Medical Discipline, the Board's counterpart in Maryland, viewed Dr. Mannan's *Alford* plea and the § 641 proceeding completely differently. *See In re Dwyer,* 399 A.2d 1, 11 (D.C.1979) (anything in record that detracts from weight of evidence must be taken into account) (quoting *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 487–88, 71 S.Ct. 456, 464–65, 95 L.Ed. 456 (1951)). Since the Maryland Commission presumably has a better understanding of Maryland law, this evidence was relevant and worthy of consideration by the Board, even if, as the government argues, the Board were to decide to punish the same conduct more strictly than Maryland did.

The Board also erred when it refused to hear Dr. Mannan's experts' testimony regarding the Maryland Medicaid coding system. *See Shay v. District of Columbia Bd. of Zoning Adjustment,* 334 A.2d 175, 178 n. 10 (D.C.1975) (opinions of qualified experts are not to be lightly disregarded). Maryland's Medicaid coding system for billing was at the heart of the contention that Dr. Mannan violated Maryland law. Dr.

---

25. In *Tate,* a teacher entered an *Alford* plea to the charge of possession of marijuana and was placed on probation for first-time substance offenders under MD.CODE ANN. art. 27, § 292(b) (1957). The County Board of Education dismissed the teacher from employment based on her "conviction." The court held that a guilty plea under § 292 was not a conviction which could subsequently be used in an administrative proceeding to establish that the teacher was guilty of misconduct. The court noted that the State Board of Education, which reviewed the County's decision, "overlooked or ignored pertinent testimony.... which in and of itself denotes misconduct." *Tate, supra,* 61 Md.App. at 149–50, 485 A.2d at 690. Thus, rather than depending upon the "finding" of guilt from the prior criminal proceeding at which an *Alford* plea was made, and possibly subverting the intent of § 292, the court focused on the use of independent evidence to support a subsequent finding of guilt, *id.,* contrary to the Board's focus in the instant case.

Mannan's effort to present such testimony did not constitute an attempt to retry the Maryland case, but rather to offer evidence explaining the basis for his plea. The proffered expert testimony, which was not cumulative, also was directly relevant to the issue of character insofar as carelessness or negligence, as distinct from willfulness, was at issue. The Board was required to take such character evidence into consideration in determining the appropriate disciplinary sanction. *Cf. In re Reback,* 513 A.2d 226, 331 (D.C.1986) (*en banc*) (imposition of appropriate disciplinary sanction on attorney requires consideration of all relevant factors, including any aggravating or mitigating circumstances surrounding the misconduct). The Board's ill-founded objections to Dr. Mannan's efforts to present expert testimony and other information to the Board to explain the Maryland proceeding and the peculiarities of the Maryland Medicaid coding system denied Dr. Mannan the opportunity to provide, and the Board to receive, all necessary information relevant to Dr. Mannan's case. In sum, the Board's lack of appreciation of the nature of the Maryland § 641 proceedings and of the facts constituting the basis for Dr. Mannan's plea, and its disregard of other evidence directly relevant to the issue of his willfulness, left it without a basis for imposing discipline. The uncertainty of the findings made by the Maryland court, compounded by the ambiguity surrounding Dr. Mannan's plea, made the documentary evidence from the Maryland proceeding too unreliable a basis for the Board's findings.[26]

Accordingly, we hold that the Board lacked reliable, probative and sufficient evidence to support its finding of willfulness by Dr. Mannan, and that the Board denied him his statutory right to present evidence in response to the charges and to rebut the government's documentary evidence. The Board could not find Dr. Mannan had violated D.C.Code § 2–3305.14(a)(8) for willful professional misconduct on the basis of documentary evidence from a criminal proceeding which failed to establish that fact. The only other evidence cited by the Board in support of its finding was nine pages of Dr. Mannan's testimony. This testimony shows that Dr. Mannan exercised very poor judgment in not monitoring his billing procedures more closely, as one of the Board members at the hearing acknowledged, but it is not substantial evidence of culpable fault or omission, such as allowing his assistants to perform acts requiring a medical license, *see, e.g., Vann, supra,* 480 A.2d 688 (undertaker's license revoked when unlicensed employee performed duties of a licensed undertaker in disposing of corpses); *Greene, supra,* 218 A.2d 508 (real estate agent's license revoked for allowing unlicensed salesperson to pose as licensed agent in the office), or knowing indifference to the consequences of his actions. *Bohannon, supra,* 288 A.2d at 675. Numerous examples were presented in the rest of the evidence, moreover, refuting Dr. Mannan's alleged willfulness, including the stipulation of the government that Dr. Mannan "is an excellent doctor," and a "man of great compassion" who has treated many of his patients for free.

In reversing, we recognize the Board's conscientious effort to fullfill its statutory obligations. Admittedly, the concept and appropriate use of an *Alford* or *nolo contendere* plea, or even a guilty plea, is not without difficulty in civil and administrative proceedings. Some uncertainty undoubtedly was due to the confusing transcript of the Maryland proceeding. However, while the Board may determine the standard for willful behavior under the Revision Act, it was duty bound, since it chose to charge Dr. Mannan with a separate offense under District of Columbia law on the basis of the Maryland adjudication, to understand the legal implications of the plea in the context of a § 641 proceeding and to be fully informed of the relevant factual circumstances. The necessity for such care is manifest when the government not only stipulates to the licensee's praise-

**26.** *Cf. Martin, supra,* 532 A.2d at 109 (reversal may be warranted if an agency places undue confidence in hearsay evidence that is too unre-liable to justify the weight given to it) (citing *Jadallah, supra,* 476 A.2d at 676–77).

worthy character and the admirable nature of his practice, but the state initially proceeding against the licensee leaves his license to practice medicine undisturbed, and when evidence before the Board includes statements by the Board's counterpart in the other state that the licensee's violations did not involve willfulness.

*Reversed and remanded to the Board with instructions to vacate its order of October 6, 1987, without prejudice to the commencement of de novo proceedings.*